139, YOUNGMAN v. SHINSEKI. Mr. Carpenter, when you're ready. May it please the Court. Thank you very much, Your Honors. Kenneth Carpenter appearing on behalf of Sharon Youngman. Ms. Youngman is an attorney who was appointed by the VA as a fiduciary. A fiduciary is defined both by statute and by VA regulation. The fiduciary's function by both statute and regulation is to receive benefits that are due and payable to a veteran during that veteran's life. The benefits at issue in this case were such benefits. Those benefits were not paid to the fiduciary. And Ms. Youngman would be a successor fiduciary appointee, correct? That would be correct. The previous one for the past due, $350,000, was created on the account of the previous curator, but then he failed to file the correct reports and had to be replaced. Well, actually, Your Honor, I think chronologically there were problems with the other fiduciary, but because of a delay in getting the actual document published, which created the past due benefits, that happened in the transition between the two fiduciaries. Your record shows at age 58 that there was an estimated VA retro check of $350,000 sort of just there around the time of the previous person, and they said don't issue that check until the successor's appointed. That's correct, Your Honor. And the reason that I say that is that there was a delay in publishing the actual rating decision that created that payment. But the bottom line was, yes, those payments were deemed to be payable to Mr. Richardson under, as it were, the law. As I understand, the Kansas statute annotated on compensation to curator, no compensation would be allowed to Ms. Youngman on the corpus of the estate that was created on the account of the preceding curator. I'm sure Ms. Youngman was going to be able to do, she would not be able to get any compensation associated with that $350,000. Not as it would have existed had it been paid. I think it would be a question for the district court to decide based upon the significant delay should. And there's no, according to our previous opinion and what I understand in the case, the veteran died without any spouse, children, or dependent parents. No qualifying survivors under 5121. Presumably the veteran may have had some creditors. Actually has some heirs, Your Honor. He does have some heirs, but they're non-qualifying heirs. They're not qualifying. Under 5121 small. So the money would not escheat? To the state, no, it would not. Because of the heirs? Because of the estate. There is an estate that was opened in Wyandotte County by the heirs of Mr. Richardson and the monies. Because under the federal rules, if there were no possible heirs under state law, and the escheat would go to the state, then if the money had been paid over to Ms. Youngman, she'd be obligated to pay it back to the estate. That would be correct. And that is not... What is Ms. Youngman going to do with this $350,000 if she gets it? Pay it to the estate, Your Honor. Pay it to the estate? Correct. As she would have had the VA distributed the money as they indicated originally that they were intending to do, and as they caused her to get a $450,000 bond in order to receive that money. And all of those actions were taken and accomplished prior to Mr. Richardson's appeal. The question becomes here whether or not the board's dismissal of this appeal and the affirmance by the Veterans Court misinterprets the VA statute and regulations that apply to fiduciaries. Fiduciaries are assigned with the specific responsibility to receive... I'm trying to get me, because I couldn't tell from your brief what was going to happen with the money. You're now telling me that it's not on record that there are some heirs here. No, Your Honor. I mean, it is not of record, but yes, there are. I mean, it's looked to me like it's the only hinge you had for your case. I understand your argument based on the regulations. And you did present that argument below and the BVA should have ruled on that. And in my judgment, they were wrong to say that they had no jurisdiction. But the CAVC gave an implied interpretation of those regulations, as your brief says. And they said, well, I'm sorry, those regulations can't mean what Mr. Carpenter says they mean, because when the veteran dies, he dies. And whoever's standing in the shoes of the veteran has no better claim than the veteran. And this young man would be standing in the shoes. So that's the implied interpretation. That's correct, Your Honor. And what I think you're trying to tell me is the person that's getting gipped here are the heirs. That's correct, Your Honor. This is not... It's not a child, it's not a wife, and it's not a dependent parent, but it's cousins or something like that. That's right. And if they're... And you're saying there's no way to get that money out of the federal government and into a probate court in Kansas, unless it passes through Mrs. Young, Ms. Young. That's correct. Would have been helpful if you told me that in the brief. Well, Your Honor, unfortunately, that was the part of this case that was cut off by the VA because they refused to entertain... But you could certainly have let us know that. I mean, on the face of the briefs, that's why I was asking, what's Ms. Young going to do with the money? Because she has to certify that she has applied the benefits for the best interest of the beneficiary. She had a duty to make that declaration. And so you got to do something with that money other than just enjoy it. Well, that was my mistake, Your Honor. The VA was informed, they have had contact with the estate, and they refused the estate as they... Where's the hook? Where is in the statute any authority to the VA to transfer money to Ms. Youngman for and on behalf of the heirs of the decedent? There is no such hook, Your Honor, but I don't think such a hook is required. What is required... I think maybe it is. Well, Your Honor, the plain reading of the VA makes a determination, and they had already made the determination that Mr. Richardson was not competent to send those monies to on his behalf. And they certified that Ms. Youngman was that qualified person prior to his death. What's the difference between the past benefits and the accruing benefits? Because as of the day he died, Ms. Youngman could not receive a monthly benefit for him. That's correct. Because that died with him. That's right. And what the CAVC is saying, they interpret the lump sum past due the retro to be exactly the same. It dies too. That's right. And I believe... And Congress provided that the retro could go to three different places. It could go to children, it could go to a spouse or dependent parents. That's correct. They didn't say anything about other heirs. That's right. And so in the silence of no other heirs, why should the VA give the money to Ms. Youngman to give to the probate court in Kansas for the heirs? The federal law is supreme. And federal law has, as I understand it, what you're telling me now, excluded the heirs. That's right. But the fact in this case were that these monies should have been transferred by the VA prior to his death by the internal directions of the VA, which they changed retroactively. The orders, the ink was signed on Ms. Youngman's commission, what, four in the afternoon on Thursday? No, Your Honor. If you'll look at the record at page 60, on May 19, 2005, the VA service center manager issued a certificate of legal capacity to receive and disperse benefits designating Ms. Youngman as Mr. Richardson's legal custodian. That's in the record at JA-60. For monthlies. For the monthlies. Right, but if you... Withhold all retro pay. So no authority to transfer the retro pay. That's page 60. Retro pay was on hold. It says right there. Yes, but I'm sorry, Your Honor, there's another document. And I saw that didn't help you. Okay, page 67. Okay. That's the one. That's July 25, July 27, 05. Mr. The veteran died the next day. That's on page 67. And that's where the lump comes out. Retro comes out right there. Because the bond was received. That's correct, Your Honor. So it's somewhere, you know, as of the close of business on the 27th. And the veteran died the next day. I don't know what time. Do we know the hour of death? I'm sorry, Your Honor, I do not recall. But my recollection is... We're talking here less than 24 hours. Yes, yes, yes, Your Honor. And your argument is by force of law, the money went after the document at page 67 was created. Yes, Your Honor. But the appointment of Ms. Youngman as the fiduciary entitled her to receive those benefits. And the only thing that the VA was waiving on was what's reflected in the documents at 67. That's right, the bond. Because she's a nudum pactum. She's got no authority to receive until the bond's in place. She has a title, but she has no right to receive. That's correct, Your Honor. So nothing's happened until late in the day, apparently on the 27th of July. Well, why are you... It looks to me as if, and I haven't been able to sort this out entirely, maybe you've been over this, but it looks to me as if other provisions of 5502 other than A seem to address this collection of problems that arise when there's a lump sum of money and there's a fiduciary in the picture. For example, 5502E deals with the problem of what you do if the money was as cheap to the state, which is that the statute says, no, no, no, it is cheap. We get it. We'll keep it. We'll take it. Thank you. I'm looking at D, which looks like it addresses perhaps a case such as this. I had not, like Judge Clevenger, I had not realized that your claim ultimately was for the benefit of the estate. But it looks as if that authorizes the portion of the payment is necessary to take care of the dependents and those others that would be eligible under 5121, but otherwise not to pay out money, which would ultimately go to the estate. Is that not your reading of 5502D? Yes, Your Honor, but I believe that that is read in concert with 5121A when there are qualifying survivors under 5121A. In other words, it is where those two actually merge. In this case, it is my view that those do not merge. In fact, the Veterans Court noted that at no time has Ms. Youngman ever asserted that she qualifies under 5121A. Yes, but if 5502D deals with the problem of what do you do if you do have some 5121 qualifying beneficiaries, but then you have money left over or whatever, that that all goes back to the Treasury, it would seem odd to say that that doesn't happen if you don't have any qualifying beneficiaries. Well, except that that to me is the disconnect because if you have qualifying survivors, they get the whole thing. That's where I was having problems. For example, there's a burial expenses issue. That in that setting, at least, it would sound like you would pay the burial expenses, the Secretary would authorize the release for $1,000 and whatever, and then keep the rest. That would be correct. Right, but if there don't happen to be burial expenses, then the Secretary does not have the option of keeping it all? Well, I do not believe that they do, Your Honor, and that's why Ms. Youngman brought this appeal. She's in a position of having been appointed as a fiduciary and given this responsibility, and then the VA says that she shouldn't act in accordance with that responsibility when she makes demand for that distribution. She was simply taking the appeal through the But I guess the question in my mind, it comes down to this. If you take all the statutes and regulations together, do they amount to telling us that the way that Congress wants these funds to be distributed is to the qualifying beneficiaries under 5121, and if not, back to the Treasury? And if that's the overall structure, then you lose, right? If that were the interpreted intent, that would be correct. The problem here is that there has been no such interpretation made by any court on that issue. Judge Castle below said, no, I'm not going to hear this, and did not address that question. He said that this case was controlled by the disposition in Richardson because she could not qualify under 5121A. Well, I don't know. I mean, he says that Ms. Youngman fails to present any cognizable argument that these regulations entitle her to receive benefits when, as here, there is no longer an eligible beneficiary for whom she might act. Let's take this up with the court. Thank you. Ms. Breiselman, you see the problem that's troubling us. What's the position of the VA? The position of the VA, Your Honor, is actually what Judge Bryson articulated earlier, that Congress has spoken to the situation and what occurs when there are accrued benefits that are due and unpaid at the time of the veteran's death is governed by Section 5121. And under that statute, the benefits are paid to the eligible listed beneficiaries. And then under Section A6 of Section 5121, in all other cases, the VA may only pay as is necessary to reimburse the expenses of the last sickness and burial. Well, so that if this veteran had died one day later, then the money would have flowed to the remote heirs without any debate? I don't know that it would take necessarily a day for the payment to process. Well, assuming that it was after the payment was processed and it was promptly processed. If the money, accrued benefits, had been paid, then those would have gone on through to the fiduciary and then on. Can we agree on what would have happened, say, for example, if the veteran had lived for a month after the July 27th date? If the veteran had, say, lived for a month later, then Ms. Youngman would have received the retrocheck. Correct. We can assume that. And then the VA would have realized that the veteran had passed away. And the VA has regulations for saying, well, we'd like some of the money, we'd like the money back, if it would have cheated. Yes, if it would have cheated. Now, if indeed there was a living heir, then under Kansas law, the 350 would not have cheated, correct? That is my understanding. Okay. So that, so the chances are that the heir, if it was legitimate and all the rest, the heir, after probating and whatnot, would have enjoyed substantially the proceeds of the retrocheck. Yes. Okay. Now, under your interpretation, based on the 5121, the Castle, the wife, Judge Bryson said that Congress has made a decision that cousins in Kansas get disinherited. Under Section 5121, yes. That's right. The federal law has made a decision that first cousins, not as good as children, first cousins are disinherited by the matter of federal law. That is correct. And I think that would reflect the policy decision by Congress that the enumerated individuals that may take under Section 5121 are the dependents, and those people that would be relying upon a veteran. And so that Congress has made the policy judgment along the way that heirs under the law of whatever state they may be. And that's consistent with the overall scheme that the veteran's benefits are payable to a veteran and his dependents, not to a veteran and his relatives. That is correct, Your Honor. But I think we, while you're completely correct, we actually don't even need to reach in these issues because the court has already decided these issues in Richardson v. Nicholson in 2007. And in that case, Ms. Youngman brought suit attempting to substitute, and this court decided that Mr. Richardson's death extinguished his claim to those benefits, and therefore his fiduciary's entitlement to those benefits. So claim preclusion bars this second suit based on that exact same set of facts. Ms. Youngman's attempts to distinguish Richardson really fall flat here. In her reply at one, Ms. Youngman argued that Richardson addressed only the estate's ability and not the fiduciary's ability to compel payment. This court's decision at page 885, though, framed Ms. Youngman's argument as the fact that the Department of Veteran Affairs' prior recognition of her as a fiduciary allowed her to compel payment of the same benefit. And the court also noted that in Richardson, Ms. Youngman argued that no other relief was available to her or the heirs at law except substitution in Richardson. Nevertheless, we're back again with a second suit on the same set of facts in seeking to compel payment of those same benefits, just now pointing to different regulations. Even if those regulations were relevant to this case, which they're not. The mandamus petition was a trap for the unwary. Mm-hmm. It's not that it was necessarily a trap for the unwary, but there is absolutely an obligation of a party that if they are coming to court for relief, they need to raise all of their grounds to relief in a single suit to prevent successive litigation. And again, even if the entire suit is not barred, the issues at heart here have already been decided that Ms. Youngman is not someone that can take these benefits. She can't pursue a claim that lapsed with Mr. Richardson's death. And I think that goes back to what Your Honor said earlier, that a fiduciary cannot have a better claim than that of the individual that they are acting on behalf of. Well, let me explore that precise question a bit. Suppose that we leave the estate and the heirs aside, and suppose that Ms. Youngman herself has expenses. I mean, she had to get a large bond. Presumably that involves the expenditure of funds. I don't know whether those funds already have in some way been covered by payments from the VA or otherwise, but assume that they haven't. What's her recourse statutorily and under the regulations? Is she just out of luck, or is there recourse for her to go to the secretary and say, my period leading up to and upon my appointment? Your Honor, that's a very fair question. I actually don't know the answer if there is a provision for that. It seems like something that might be possible, or there would always be the estate to make claims against if she believes she has incurred expenses on behalf of Mr. Richardson. There would potentially be an estate other than the VA benefit. Well, she clearly had to post a bond. She had to pay for that. So I would assume Ms. Youngman has some expenses, out-of-pocket expenses. Yes, she very well may. And I'm assuming the veteran had no money at all, and the cousin isn't responsible for the veteran's legal expenses. I don't know that it would be the case that Mr. Richardson had no money at all. His monthly benefits were being paid by that point, had been being paid. It was just a lump sum that was still withheld at the time of death. But going back to the particular regulations that Ms. Youngman points to here, they speak only to the authority of the VA to appoint a fiduciary. And absolutely, when a fiduciary is appointed, under the very definition of fiduciary, in Section 5506, that fiduciary is appointed to receive benefits for the use and benefits of the veteran or other beneficiary. Nothing in any of the language Ms. Youngman has pointed to vests the fiduciary with an entitlement in their own right. Instead, it's always on behalf of the individual. So when there is no longer a beneficiary. You have to apply the benefits for the best interest of the beneficiary. Correct. So when there is no... That doesn't include taking care of a needy cousin. No, Your Honor. Instead, as I pointed out earlier, Congress spoke to this situation. We have due and unpaid accrued benefits. And therefore, this is a Section 5121 case. And Ms. Youngman has really presented no argument to the contrary that would make this anything other than an accrued benefits case. But these are not the issues before us, are they? Don't we have quite a fundamental policy issue as to what happens when the veteran dies and their unpaid funds, whatever the source of the unpaid funds. We have a certain body of precedent which has dealt with it. This is another particular circumstance of funds that should have been retroactively over all this period. So we know there's a certain entitlement. These are the question of national policy, isn't it? The best use of these funds. I haven't heard anyone argue that the best use is the remote relatives who were not dependents of the veteran, but rather a matter of straightforward administration of these complex statutes. Where are there so many hundreds of thousands or more of beneficiaries involved? Just have a straightforward rule. This, again, if the veteran lived another day or two, we'd have a totally different policy question, I would think. So here we have the fortuity, or whatever you call it, of the time of death and its effect on the check that presumably would have been drawn that afternoon. So where is the policy? It seems to me that, well, a straightforward policy would be just you're supposed to pay it, pay it. But there are other issues that I suppose come to the fore when the sums are large enough. But has the secretary taken a policy position, or are you just arguing whatever it is the answer is no? I believe the policy has been set by Congress, Your Honor, that if these benefits are paid, they become the property of the estate. They have gone on to the veteran. However, if they are not paid, they are then governed by Section 5121 in its definition of accrued benefits, that they are the benefits that the veteran is entitled to at the time of their death under the existing ratings and decisions, but that are due and unpaid. And instead, those would go through Section 5121. However, if the benefits had been paid, Congress has said those may continue on through to the estate. So it isn't the policy decision of the secretary. It's the clear language of the statute that governs here, and the policy has been set by Congress. If there are no further questions, for these reasons and the reasons set forth in our... You don't disagree that the Board of Veterans' Appeals erred in saying they had no jurisdiction over Mr. Carpenter's argument based on the regulation? The government agreed below that the board had had jurisdiction. However, the Veterans' Court phrased this decision as even assuming that the parties are correct. It never actually made a decision on that particular error. Instead, the Veterans' Court decided on grounds of prejudicial error, and that Ms. Youngman was not entitled under these regulations that she had pointed to to these funds. And of course, the prejudicial error determination cannot be challenged before this court. And Mr. Garvin didn't preserve a challenge on that? I do not believe so. We challenge the interpretation of the regulations. The implied interpretation, yes. Any more questions? Thank you, Ms. Garvin. Thank you, Your Honor. May it please the court, if we could go back to JA 67. This is the document that Judge Clevenger and I were discussing, one of the two, one at 60 and one at 67. The date of this document is July 27, the day before. 57? 67, Your Honor. This is the day before the death of Mr. Richardson. And under the remarks, it clearly indicates that the bond was received from the curator and all withheld benefits can be released to the curator. Now, this was a disposition that was, as was in response to the hypothetical, had Mr. Richardson died several weeks later. Sure. And just to suggest that here, unfortunately, he died the very next day. The very next day. That's correct, Your Honor. And the question here becomes whether or not the VA gets to keep these funds because of the provisions of 5121 or whether the VA is obligated under their appointment of Ms. Youngman and her qualification and her providing the bond and the VA having received the bond, whether or not the correct policy here is, is that you distribute that money as the regulations contemplate to the appointed fiduciary. And that was simply not done here. And it was not done here because it was retroactively decided that based upon the death, this would be treated as an accrued benefit matter. This is not an accrued benefit matter. The VA directed what the outcome was supposed to be the day before he died. They simply can't unring that bell. And to try to convert this into a 5121 action is simply unconscionable when compared to the fact that we're dealing with $350,000 worth of benefits that Mr. Richardson never received during his life. And with all due respect, this is not about the disinheritance of the second cousins. This is about fundamental fairness to Mr. Richardson. Mr. Richardson had the right to cease. He was not deceased on July the 27th, Your Honor. He was alive and well on July the 27th. And on July the 27th, the VA received the bond and directed that all funds were to be released. And if he had stayed alive for some period of time after that, he would have received the funds. So the person, as Judge Clevenger says, the person in Mr. Richardson's position, it seems to me, is never going to be prejudiced by the rule that the government is arguing for, right? It's the heirs that are potentially subject to losing out. Well, yes, Your Honor, except that that seems to me to beg the fundamental question that is at the heart of this action. The VA has conceded that the board was wrong. The board did not give... Can you address the policy argument that your adversary made? So this benefit system is set up to benefit the beneficiary and his dependents, dependents as they're defined. Cousins never get any money out of the system. So the question here is to say when they're dealing with the past due payment, they say the Congress has decided that if you are in the qualifying line of taker, then even though the veteran himself wouldn't get it, the wife, the children, or the dependent parents would get it. But Your Honor, that requires a claim. That requires affirmative action by the filing of a VA form to make a claim for accrued benefits. No such process was required because of the affirmative action of the VA the day before Mr. Richardson's death. And based upon that action, that action distributed, required the distribution to the VA and court-appointed fiduciary. When that was not done, that was done to the harm of the veteran who at the time was still alive. Do you happen to know if Ms. Youngman has any outstanding... No, she does not. ...claims? No. No. So she's been paid for the bond and everything else? As the VA suggested, there were a past due benefit in the regular monthly benefits that they could withheld in the transition, and those were made available and the expenses have been paid out of that. Can I ask a point of history, Topeka, Kansas history? Yes. Once upon a time, there was a law firm of Youngman and Carpenter... Yes, there was. ...in Topeka. Does it still exist? No, it's now just Youngman. But they still exist. And that was Derrick Carpenter? That's correct. Is that a relative? No, but he did practice with me for a time. Thank you very much. It just is a matter of history. Thank you very much. We're from Topeka, Kansas. Yes. Okay. Thank you very much. Mr. Carpenter, Ms. Bileman, the case is taken under submission.